IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE H. GRESS, on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : : | |
| v. | : : | Civil Action No.: 1:20 CV 756 |
| SAFESPEED, LLC, an Illinois limited liability company; NIKKI ZOLLAR; CHRIS LAI; KHALID ("CLIFF") MAANI; OMAR MAANI; TONY RAGUCCI; MARTIN A. SANDOVAL; CITY OF OAKBROOK TERRACE; PATRICK DOHERTY; BILL HELM; JEFF TOBOLSKI; ROBERT GEDVILLE; JOHN O'SULLIVAN; SERGIO RODRIGUEZ; JOHN RYAN; MICHAEL CARBERRY; JOHN KOSMOWSKI; and BILL MUNDY | : : : : : : : : : : : : : : | Hon. Robert M. Dow, Jr. |
| Defendants. | : : | |

**MEMORANDUM IN SUPPORT OF THE
MOTION TO DISMISS THE COMPLAINT
BY NIKKI ZOLLAR AND CHRIS LAI**

*/s/ Zachary T. Fardon*
Zachary T. Fardon

KING & SPALDING LLP
Zachary T. Fardon
Patrick M. Otlewski
353 N. Clark Street, 12th Floor
Chicago, IL 60654
Phone: 312.995.6333
zfardon@kslaw.com
potlewski@kslaw.com

*Attorneys for Defendants
Nikki Zollar and Chris Lai*

## I.   INTRODUCTION

Plaintiff is a disgruntled former applicant for employment at PACE. His inability to obtain employment at PACE already led him to initiate litigation against former Illinois Senator Martin Sandoval and others, alleging in a federal lawsuit that Sandoval engaged in racketeering with the Regional Transit Authority, PACE, and the Chicago Transit Authority. *See Gress v. Reg'l Trans. Auth.*, *et al.*, N.D. Ill. Case No. 17 CV 8067 (Pacold, J.).

During the pendency of that lawsuit, on January 28, 2020, Sandoval pled guilty to a two-count federal criminal information charging him with bribery, in violation of 18 U.S.C. § 666(a)(1)(B), and filing a false tax return, in violation of 26 U.S.C. § 7206(1). *See* Plea Agreement, *United States v. Sandoval*, N.D. Ill. Case No. 20 CR 56, Dkt. No. 12 (Wood, J.). In pleading guilty, Sandoval admitted that he accepted bribes from a former member of SafeSpeed, LLC, Omar Maani, who was cooperating with the federal government. Within days and without further support or basis, Plaintiff brought this sweeping racketeering lawsuit against eighteen defendants, including Nikki Zollar and Chris Lai, on February 2, 2020. The Complaint regurgitates irrelevant allegations from *Gress v. Regional Transit Authority*, adds the unrelated saga of Redflex in the City of Chicago, and quotes extensively from the factual basis of Sandoval's plea agreement. By Plaintiff's account, this suffices to broaden Sandoval's bribery scheme into a vast racketeering enterprise involving SafeSpeed, its founders, and numerous local government officials.

Plaintiff has overreached. He seeks to draw Ms. Zollar and Mr. Lai into the Sandoval-Maani bribery scheme because Ms. Zollar and Mr. Lai are SafeSpeed executives and shareholders. But company ownership and leadership alone do not suffice under the law, and Plaintiff offers no facts implicating Ms. Zollar or Mr. Lai in the Sandoval-Maani scheme. Plaintiff fails for a simple reason: he has no facts supporting his allegations. Ms. Zollar and Mr. Lai were not part of any fraudulent scheme, and there are no facts implicating them in Sandoval's misdeeds. Ms. Zollar and Mr. Lai

1

respectfully request that this Court dismiss the Complaint against them because it fails as a matter of law as to each of them.

## II.     THE COMPLAINT'S ALLEGATIONS

Plaintiff is a resident of Illinois, who allegedly received a citation from Oakbrook Terrace after his vehicle ran a red light on December 12, 2018. Compl. ¶¶12, 63-66. He seeks to certify a nationwide class of plaintiffs who received red-light camera violations beginning "no later than 2016 and at least through October 11, 2019," in any Illinois municipality with cameras installed after "Sandoval agreed to accept bribes," and in municipalities where red-light cameras "w[ere] corruptly and fraudulent[ly] procured through bribes paid to public officials . . . ." *Id.* at ¶¶38, 212.

The Complaint alleges in conclusory fashion that beginning in 2016, SafeSpeed, its members, and sales agents "created and conducted, in collaboration with various public officials and municipalities, a racketeering conspiracy that corruptly used red-light cameras . . . to create a 'money machine' . . . and thereafter used bribes to protect the money machine from calls for legislation to ban [red-light cameras] . . . ." *Id.* at ¶1.

At the heart of Plaintiff's Complaint is the incorrect allegation that "Sandoval accepted at least $70,000 in bribes from SafeSpeed," *id.* at ¶4, a refrain repeated throughout the Complaint. In making this false accusation, which is central to the Complaint, Plaintiff glosses over the fact that ***the federal government***—not SafeSpeed—supplied Omar Maani with the $70,000 he used to make undercover payments to Sandoval as a federal cooperating witness during the government's investigation. As Sandoval's plea agreement spells out, it is the federal government to whom Sandoval must repay $70,000 now that he has pleaded guilty. That is because the government's money—not SafeSpeed's—was used during the government's investigation to make bribes to Sandoval. *See* Plea Agreement, *United States v. Sandoval*, N.D. Ill. Case No. 20 CR 56, Dkt. No. 12,

¶18 (Sandoval agreeing to "repay the United States $70,000 as compensation for government funds that defendant [Sandoval] received during the investigation of the case").[1]

Lacking facts that inculpate Ms. Zollar in Sandoval and Omar Maani's bribery scheme, Plaintiff has reached for Ms. Zollar because she is the "co-founder, stakeholder, President, and Chief Executive Officer of SafeSpeed." *Id.* at ¶15. Using Ms. Zollar's executive position within SafeSpeed as a springboard, the Complaint alleges in conclusory fashion that Ms. Zollar "caus[ed] SafeSpeed secretly to hire public officials as commissioned, undisclosed sales agents ('Consultants')," "fund[ed] bribes paid to Sandoval and other public officials in a position to influence or approve the installation of SafeSpeed [red-light cameras] and to prevent adverse actions in the Illinois General Assembly or IDOT," and "conceal[ed] such bribes from the General Assembly and the citizens of the State of Illinois so as to defraud Plaintiffs and the Class . . . ." *Id.* at ¶36(a). But the Complaint offers no facts to support these conclusory allegations against Ms. Zollar.

Just as with Ms. Zollar, Plaintiff lacks facts inculpating Mr. Lai in the Sandoval-Maani scheme. Nonetheless, Plaintiff focuses on Mr. Lai (like Ms. Zollar) because of his executive position as "co-founder and Chief Operating Officer at SafeSpeed." *Id.* at ¶16. Plaintiff then repeats the same conclusory allegations he invoked against Ms. Zollar, suggesting that Mr. Lai participated in the enterprise by "causing SafeSpeed secretly to hire public officials as commissioned, undisclosed sales agents ('Consultants') whose compensation was calculated as a percentage of monthly income from [red-light camera] fines collected from [red-light cameras] they helped to place; by funding bribes paid to Sandoval and other public officials in a position to influence or approve the installation of SafeSpeed [red-light cameras] and to prevent adverse actions in the Illinois General Assembly or

---

[1] This Court may take judicial notice of the contents of the entire Plea Agreement as a public record upon which Plaintiff has relied for his Complaint. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-94 (7th Cir. 2011).

IDOT; and by concealing such bribes from the General Assembly and the citizens of the State of Illinois so as to defraud Plaintiffs and the Class . . . ." *Id.* at ¶36(b). Just as with Ms. Zollar, the Complaint has no facts to support these conclusory allegations against Mr. Lai.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Dismissal under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint for "failure to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(b)(6). At the pleading stage, this Court must "accept the factual allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). Nonetheless, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alteration, citation, and quotation marks omitted). Plaintiffs must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

While factual allegations are taken as true, conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Id.* at 680-81 (observing that a "legal conclusion" was "not entitled to the assumption of truth" and rejecting as conclusory allegations that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). To survive dismissal, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate when a plaintiff fails to nudge his "claims across the line from conceivable to plausible . . . ." *Id.*

### B. Pleading with Particularity under Rule 9(b)

When alleging fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). Rule 9(b) applies to RICO claims, where (as here) fraud is alleged as a predicate act of racketeering. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). This heightened pleading requirement has "three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

In a multi-defendant complaint like this one, "lump[ing] together" multiple defendants does not meet Rule 9(b)'s pleading standard. *Id.* at 778. Instead, a complaint must plead sufficient facts for each defendant to establish his or her "purported role in the scheme." *Id.* (internal citation omitted); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## IV. ARGUMENT

The Complaint should be dismissed in its entirety against Ms. Zollar and Mr. Lai under Rule 12(b)(6). The Complaint is fatally flawed because it has no facts supporting its conclusory and insufficient allegations. As a result, Plaintiff has not alleged the elements of substantive racketeering and racketeering conspiracy against Ms. Zollar and Mr. Lai, requiring dismissal of the Complaint's claims against them.

### A. The Complaint's § 1962(c) Claim Against Ms. Zollar and Mr. Lai Should Be Dismissed.

Title 18, United States Code, Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." RICO "is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th

Cir. 2006). But "[c]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Id.* at 710 (internal citation omitted). "That is too broad a brush given RICO's limited concern of punishing organized and habitual criminal conduct." *Id.*

A plaintiff looking to state a § 1962(c) claim must plausibly allege a cognizable injury to business or property resulting from the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). In this multi-defendant civil racketeering case, Plaintiff must plead each element for each individual defendant without exception. *See Green v. Morningstar, Inc.*, No. 17 C 5652, 2018 WL 1378176, at *9 (N.D. Ill. Mar. 16, 2018); *Dudley Enters., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 502 (N.D. Ill. 1993).

There are no facts that warrant the Complaint's substantive racketeering claim against Ms. Zollar and Mr. Lai to proceed past the pleading stage. For both Ms. Zollar and Mr. Lai, the Complaint fails to allege the necessary elements of racketeering: (1) there is no enterprise, let alone participation by Ms. Zollar and Mr. Lai in an enterprise; (2) Ms. Zollar and Mr. Lai did not engage in a single predicate act of racketeering (let alone the requisite two), nor is there a pattern of racketeering; and (3) the injury allegedly suffered by Plaintiff and the Proposed Class was not proximately caused by the alleged racketeering activity.

### 1. The Complaint Fails Without an Enterprise.

The "first rule" of RICO pleading is that the "plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (internal citation and quotation marks omitted). Because the Complaint alleges an association-in-fact enterprise, *see* Compl. ¶¶8, 33, it must meet the standard set in *Boyle v. United States*, 556 U.S. 938 (2009). Under *Boyle*, an association-in-fact means "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 946 (internal citation and quotation marks omitted). *Boyle* identified three key features of an

association-in-fact: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* The Complaint fails to meet these requirements.

To begin with, the Complaint's factual allegations at most establish that Martin Sandoval and Omar Maani shared a common purpose in their bribery. But there are no facts indicating coordination or common purpose by Ms. Zollar and Mr. Lai with Sandoval and Maani, nor with the other named defendants. Not even the heavy quoting of Sandoval's plea agreement saves the Complaint. The most Plaintiff can do is point to defendant Sandoval's admission in his plea agreement that, on or about August 16, 2017, Sandoval discussed with Omar Maani, the cooperating witness, "splitting up Company A's annual campaign contribution to SANDOVAL into smaller amounts." Compl. ¶187. Omar Maani, the cooperating witness, allegedly responded to Sandoval that "Company A's President did not want the contribution to 'shout out,' meaning raise a red flag." *Id.* At most at the pleading stage, it should be taken as true that Omar Maani made this statement to Sandoval. But it goes no further to implicate Ms. Zollar, and it certainly does not support the inference that Ms. Zollar actually made the "shout out" statement, that Ms. Zollar knew Omar Maani said this to Sandoval, or that Ms. Zollar knew Omar Maani was engaged in a bribery scheme with Sandoval. Thus, even on its face, the Complaint has no facts showing that Ms. Zollar and Mr. Lai shared a common purpose with Sandoval, Omar Maani, or the sixteen remaining defendants.

Additionally, there are no facts demonstrating that the alleged enterprise existed as a standalone entity, as opposed to a disparate group of individuals. In an effort to bypass this shortcoming, the Complaint resorts to conclusory and facially insufficient allegations to describe the actions of the alleged enterprise. The Complaint begins by alleging in conclusory fashion that the "[e]nterprise is distinct from, albeit conducted by SafeSpeed, through its members and the other Defendants, and has an ongoing existence." *Id.* at ¶35. The Complaint continues with conclusory

and unsupported descriptions of what the enterprise allegedly did, such as providing "false, deceptive, and misleading information . . . to the Illinois General Assembly regarding Sandoval's support," "creat[ing] a small army of undisclosed sales agents," "conceal[ing] the bribes that induced Sandoval's support of Safespeed," and "mailing documents . . . containing misrepresentations and omissions to the Class." *Id.* at ¶204(a)-(d). These conclusory allegations are inadequate to establish an enterprise. "[A]n enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1440 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.")); *see also Haddad v. Am. Home Mortg. Servicing, Inc.*, No. 18 C 00731, 2019 WL 1425835, at *9 (N.D. Ill. Mar. 29, 2019) (slip op.) (finding no enterprise was pled where there were no facts in the complaint that multiple defendants "function together as a single enterprise"); *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 770 (N.D. Ill. 2005) ("[I]t is appropriate for the Court to consider whether the enterprise would still exist were the predicate acts removed from the equation, and whether the defendants' actions were motivated by anything other than self-interest.") (internal quotation marks and citation omitted).

Lacking facts to plead an enterprise, the Complaint's § 1962(c) claim against Ms. Zollar and Mr. Lai should be dismissed.

### 2. The Complaint Fails Without Participation by Ms. Zollar and Mr. Lai in the Affairs of the Alleged Enterprise.

Even apart from the Complaint's failure to plead an enterprise, the Complaint fails because it does not plead facts showing that Ms. Zollar and Mr. Lai had "part[s] in directing [its] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "[T]o satisfy the 'conduct' element . . . , a plaintiff must allege that the defendant 'participated in the operation or management of the enterprise itself,' and that the defendant played 'some part in directing the enterprise's affairs.'" *Goren*, 156 F.3d at 727 (quoting *Reves*, 507 U.S. at 179, 183).

In *Goren*, the Seventh Circuit affirmed dismissal of a complaint for failure to plead that three defendants conducted or participated in the conduct of the affairs of the enterprise. 156 F.3d at 727. The *Goren* complaint alleged that ten defendants participated in a scheme to market "bogus health care products" and to recruit new promoters through a multi-level marketing plan. *Id.* at 724-25. The Seventh Circuit observed that three of the defendants "performed certain services for the corporation," which "clearly allege the existence of a business relationship between these defendants and the enterprise . . . ." *Id.* at 727-28. But this did not suffice to state a claim because the allegations failed to "indicate that these defendants took some part in directing [the enterprise's] affairs." *Id.* at 728 (internal brackets, citation, and quotation marks omitted). The Seventh Circuit held that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Id.*

Plaintiff has failed to meet the standard set in *Goren*. Ms. Zollar and Mr. Lai's executive positions within SafeSpeed, or their business functions, are facts sufficient to establish membership in a racketeering enterprise. *See Goren*, 156 F.3d at 727. For that matter, there are simply no facts demonstrating that Ms. Zollar and Mr. Lai knew about the enterprise's illicit nature, let alone that they participated in or operated the management of the enterprise. *See id.* at 728.

Despite lacking a proper factual basis, the Complaint alleges in conclusory fashion that the enterprise was "acting through Zollar," as well as that Ms. Zollar "caus[ed] SafeSpeed" to hire public officials as "undisclosed sales agents," "fund[ed] bribes paid to Sandoval and other public officials," and "conceal[ed] such bribes from the General Assembly and the citizens of the State of Illinois so as to defraud Plaintiffs and the Class . . . ." Compl. ¶¶36(a), 204-207, 209, 211. But there are no facts supporting these conclusory allegations, nor are there facts indicating that Ms. Zollar and Mr. Lai participated in the management of the enterprise.

9

The combination of conclusory allegations and insufficient pleading of participation and management in the conduct of the affairs of the enterprise warrants dismissal of the § 1962(c) claim against Ms. Zollar and Mr. Lai. *See Slaney*, 244 F.3d at 598 (affirming dismissal of RICO claim because "[s]imple exertion of control over one aspect of an enterprise's activities does not evince control over the enterprise itself"); *Goren*, 156 F.3d at 728.

### 3. The Complaint Lacks a Pattern of Racketeering Activity.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity" within the statutory ten-year period. 18 U.S.C. § 1961(5). A complaint alleging substantive racketeering must plead that each defendant "engaged in at least two predicate acts." *Green*, 2018 WL 1378176, at *9; *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 873 (N.D. Ill. 2007) ("[A] RICO Plaintiff must, at a minimum, describe the two predicate acts of fraud by each Defendant with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations."); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007) ("A RICO plaintiff must show that *each* defendant participated in the RICO enterprise by engaging in at least two predicate acts.").

The Complaint fails for two reasons: (a) it lacks two predicate acts of racketeering; (b) and, even on its face, the Complaint demonstrates that Ms. Zollar and Mr. Lai did not engage in one, let alone the requisite two, predicate acts of racketeering. Relatedly, the Complaint does not adequate plead a pattern because it fails to meet the continuity plus relationship test.

### a. The Complaint Fails Without Two Predicate Acts of Racketeering.

Plaintiff asserts that the enterprise's racketeering activity consists of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and deprivation of honest services through bribes and kickbacks, 18 U.S.C. § 1346. Compl. ¶214. When a plaintiff seeks to plead RICO's pattern element

through predicate acts of mail or wire fraud, "the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply and require a plaintiff to do more than allege fraud generally." *Menzies*, 943 F.3d at 338. "Given these heightened pleading standards and Congress's insistence that a RICO claim entail a clear pattern of racketeering activity," the Seventh Circuit has "cautioned that we do not look favorably on many instances of mail and wire fraud to form a pattern." *Id.* (internal citation and quotation marks omitted).

The Complaint does not specifically articulate the alleged predicate acts Ms. Zollar and Mr. Lai that Plaintiff believes they participated in. Nonetheless, even taken one by one, the alleged fraudulent schemes do not withstand scrutiny when viewed with respect to Ms. Zollar and Mr. Lai.

Take the Complaint's conclusory allegations of fraud allegedly perpetrated against the Illinois Department of Transportation ("IDOT") and Oakbrook Terrace. *See* Compl. ¶¶122-53.[2] The Complaint begins by stringing together campaign contributions made by SafeSpeed, Triad Consulting Services, Inc., and Omar Maani to Sandoval and Oakbrook Terrace Mayor Tony Ragucci.[3] *Id.* at ¶¶121-34. Then, with a passing reference to the factual basis from Sandoval's plea agreement, the Complaint alleges that IDOT approved Oakbrook Terrace's red-light application "after Sandoval personally intervened on SafeSpeed's behalf by bullying, threatening, and berating IDOT's head." *Id.* at ¶138. These allegations do not implicate Ms. Zollar or Mr. Lai in any fraudulent scheme. For that matter, the Complaint neither pleads facts from which one could conclude fraud occurred, nor that Ms. Zollar and Mr. Lai participated in that fraud. *See Vicom*, 20 F.3d at 778 (finding fraud alleged "lack[ed] the requisite specif[ic]ty" under Rule 9(b) because the

---

[2] The Complaint's allegations regarding an unrelated lawsuit by the Village of Oak Brook against Oakbrook Terrace, which was dismissed, *see* Compl. ¶¶140-51, are irrelevant and should be disregarded.

[3] Allegedly participating in campaign contributions does not, on its own, constitute a predicate act of racketeering, let alone participation in an illicit enterprise. *See Roger Whitmore's Auto. Servs., Inc. v. Lake Cty.*, 424 F.3d 659, 671 (7th Cir. 2005) ("Campaign contributions, of course, are not in and of themselves illegal, and they reflect the nature of the American political system for better or worse.").

complaint "often failed to identify with particularity the actors who participated in the various schemes it alleges," and "state[d] neither who made the misrepresentation nor on what date it was made"); *see also Goren*, 156 F.3d at 729 ("[W]e have repeatedly held that a plaintiff's conclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern of fraud.").

Similarly lacking are the Complaint's allegations that SafeSpeed fraudulently misrepresented to the Village of Alsip the circumstances of a traffic accident involving Ms. Zollar's relative. *See* Compl. ¶¶79-81. The Complaint begins with a reference to a newspaper article in which a spokesperson for SafeSpeed stated that Mr. Lai "had 'misspoken' when he said a serious traffic accident involving [Ms.] Zollar and her mother-in-law had occurred in 2007 and prompted [Ms.] Zollar to found SafeSpeed out of an altruistic concern for public safety." *Id.* at ¶77. Plaintiff holds this article up as proof that Ms. Zollar fraudulently misstated to the Village of Alsip's Board of Trustees that a traffic accident involving her mother-in-law was motivation to start SafeSpeed, and was done to "[f]alsely cloak[] SafeSpeed in a mantle of altruism . . . ." *Id.* at ¶¶77-81. The Complaint's first failing is that it makes the allegation regarding Alsip "[o]n information and belief," *id.* at ¶80, but that will not do. Claims made "on information and belief" do not meet Rule 9(b)'s particularity requirement. *Menzies*, 943 F.3d at 341. Second, the Complaint fails even if its faulty premise is accepted as true. The minutes of the Alsip meeting, which the Complaint relies upon and quotes, state that Ms. Zollar "explained an occurrence that had happened personally **and** the reasons to begin such a program." Compl. ¶79 (emphasis added). Those minutes make clear that the personal occurrence involving Ms. Zollar's mother-in-law was discussed in addition to reasons for SafeSpeed to begin a red-light program. Thus, no fraud occurred because no false statement was made to the Village of Alsip.

Third, the Complaint improperly alleges that each time SafeSpeed mailed a red-light violation notice, racketeering activity occurred. *See id.* at ¶226. Nothing is fraudulent or unlawful about the red-light violation notices themselves. Plaintiff does not deny that he violated Illinois law by failing to obey a traffic-control device, nor does Plaintiff claim that SafeSpeed issued violation notices without complying with the requirements of state law. Sending accurate and legal violation notices through the mail does not amount to mail fraud just because Plaintiff takes issue with how the red-light cameras themselves came to be installed. *See Slaney*, 244 F.3d at 599 ("[A] multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity."); *Tassio v. Mullarkey*, No. 07-cv-0216-WYD-KMT, 2008 WL 3166149, at *18 (D. Colo. Aug. 5, 2008) (dismissing a civil RICO claim arising out of the mailing of tax deficiency and related notices, holding that that "[m]ail fraud is not committed simply by sending notices through the mail, even if the recipient . . . perceives them as fraudulent based upon his feelings about the . . . state . . . authorities.").

That leaves defendant Sandoval's bribery scheme with Omar Maani. *See* Compl. ¶¶130-33, 181-87. Block quoting the entire factual basis of defendant Sandoval's plea agreement, the Complaint repeats the assertion that from 2016 through 2019 Sandoval agreed to accept financial benefits from the cooperating witness. *Id.* at ¶187. According to the plea agreement (as quoted by the Complaint), the cooperating witness gave Sandoval $70,000 in government funds between March 2018 and September 2019.[4] Even assuming that the Complaint satisfies the requirements of Rule 9(b) with respect to the Sandoval bribery scheme, that is only one act of racketeering between Sandoval and Omar Maani, the cooperating witness—without participation by Ms. Zollar and Mr.

---

[4] As discussed *supra,* the Complaint incorrectly alleges that SafeSpeed paid $70,000 to Sandoval, *see, e.g.,* Compl. ¶4, when it was the federal government who provided the money to the cooperating witness for payment to Sandoval as part of the government's covert investigation. *See* Plea Agreement, *United States v. Sandoval*, N.D. Ill. Case No. 20 CR 56, Dkt. No. 12, ¶18 (Sandoval agreeing to "repay the United States $70,000 as compensation for government funds that defendant [Sandoval] received during the investigation of the case" as a condition of supervised release or probation).

Lai—which cannot itself constitute a pattern. *Bastian v. Petren Res. Corp.*, 681 F. Supp. 530, 538 n.10 (N.D. Ill. 1988) ("A single criminal act clearly cannot constitute a 'pattern of racketeering activity,' regardless of how many statutes it violates . . . .").

Lacking two predicate acts allegedly committed by Ms. Zollar and Mr. Lai, and without two predicate acts by the enterprise, the Complaint's § 1962(c) claim should be dismissed against Ms. Zollar and Mr. Lai.

### b. The Complaint Fails the "Continuity Plus" Relationship Test.

Even if the Complaint alleged the requisite number of predicate acts of racketeering, the alleged pattern fails as a matter of law because Plaintiff failed to sufficiently allege continuity plus relationship between the alleged predicate acts of racketeering.

"Satisfying the pattern element is no easy feat . . . ." *Menzies*, 943 F.3d at 336; *see also J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir. 1991) ("Satisfying the pattern requirements—that there be continuity and relationship among the predicate acts—is not easy in practice."). "To plead a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity—a standard known as the continuity plus relationship test." *Menzies*, 943 F.3d at 337 (internal citation and quotation marks omitted). "[T]he relationship prong is satisfied by acts of criminal conduct close in time and character, undertaken for similar purposes, or involving the same or similar victims, participants, or means of commission." *Id.* (internal citation omitted). Continuity requires "(1) demonstrating a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Roger Whitmore's Auto Servs., Inc.*, 424 F.3d at 673. Ultimately, the question is whether the Complaint "adequately alleged that the challenged conduct

occurred and went on long enough and with enough of a relationship with itself to constitute a pattern." *Menzies*, 943 F.3d at 337.

To begin with, the Complaint fails to allege a sufficient relationship between the alleged predicate acts of racketeering. For instance, an alleged misrepresentation regarding the founding of SafeSpeed is not related in substance, actor, or content with Omar Maani's bribes to Sandoval. With respect to continuity, the Complaint notably fails to articulate the theory—open or closed continuity—upon which its pattern of racketeering rests. Under either open or closed theories of continuity, the Complaint fails.

The Complaint fails to establish open-ended continuity because no "concrete threat remains for the conduct to continue moving forward." *Id.* at 337. This is because defendant Sandoval's guilty plea eliminates the threat of future repetition. *See id.* at 343-44 (finding the grand jury indictment and conviction of an individual involved in the scheme established that the racketeering reached its "natural ending point"); *Starfish*, 370 F. Supp. 2d at 778-79 (concluding a complaint did not adequately plead a threat of future repetition where the "enterprise's ringleader" was incarcerated). Tellingly, the Complaint fails to allege any racketeering act post-dating the public disclosure of the federal investigation into Sandoval's criminal conduct, let alone his guilty plea.

The Complaint also fails to plead closed-ended continuity, which requires "enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue." *Menzies*, 943 F.3d at 337. Stripping the Complaint of its conclusory allegations of fraud, as discussed *supra*, the Complaint does not allege separate schemes with distinct injuries resulting in harm to a number of victims. Instead, the heart of the Complaint is the bribery between defendant Sandoval and Omar Maani. *See* Compl. ¶¶181-87. This was a discrete scheme occurring over a specific period of time, involving Sandoval and Omar Maani—not Ms. Zollar and Mr. Lai—and with one potential victim (the public deprived of Sandoval's honest services). That is qualitatively insufficient to establish

15

continuity, particularly when Sandoval, the central participant in the bribery scheme, pleaded guilty. *See Menzies*, 943 F.3d at 342 (finding closed-ended continuity not established where two individuals "allegedly fell victim to the same fraudulent scheme"); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (no pattern where single scheme occurred over "a period of years"); *Hartz v. Friedman*, 919 F.2d 469, 474 (7th Cir. 1990) (affirming dismissal of complaint where "all the predicate acts constituted mail or wire fraud" and "the entire 'enterprise' lasted a year and a half at most").

### 4. As a Matter of Law, Plaintiff's Red-Light Camera Violation Is Not an Injury Proximately Caused by the Alleged Activity.

Under 18 U.S.C. § 1964(c), a plaintiff must be "injured in his business or property by reason of a violation of section 1962 . . . ." In *Holmes v. S.I.P.C.*, 503 U.S. 258 (1992), the Supreme Court held that common law principles of proximate causation apply to § 1964(c) claims. *Id.* at 268-70. Specifically, in *Holmes*, the Supreme Court held that a plaintiff's injury was separated from the defendant's alleged conduct because "the [defendant] conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims." *Id.* at 271.

Similarly, in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), a business accused a competitor of not charging state sales tax and submitting fraudulent returns to the state tax authority, which allegedly allowed the competitor to undercut the plaintiff's prices, causing the plaintiff to lose business. *Id.* at 453-55. The Supreme Court rejected the business's alleged injury because the "direct victim" of the competitor's conduct was the state, which had been defrauded and lost tax revenue, not the other business. *Id.* at 457-58; *see also Hemi Grp., LLC v. New York City*, 559 U.S. 1, 9 (2010) ("A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." (citing *Holmes*, 503 U.S. at 271, 274)).

16

Even under the broadest and most deferential reading of the Complaint, the Complaint's alleged activity targeted municipalities and the state legislature. But neither Plaintiff nor any member of the Proposed Class is plausibly the direct victim of the alleged activity. Likewise, neither Plaintiff nor any member of the Proposed Class was specifically targeted by any of the alleged acts. Instead, Plaintiff and the Proposed Class's only alleged injury is the lawful receipt of $100 red-light camera violation notices. Compl. ¶¶63-69. But Plaintiff must do more than allege that "but for" the allegedly improper activity there would not have been a red-light camera to catch Plaintiff's traffic violation. As a matter of law, Plaintiff's alleged injury was not proximately caused by the alleged racketeering activity: the alleged injury is both too far removed from the alleged racketeering activity, and it is separated by Plaintiff and the Proposed Class's own violation of the law.

The Seventh Circuit's decision in *Sidney Hillman Health Center of Rochester v. Abbott Laboratories*, 873 F.3d 574 (7th Cir. 2017), demonstrates the point. There, benefit plans brought a civil RICO claim against Abbott after Abbott pleaded guilty to unlawful promotion of a pharmaceutical drug. *Id.* at 575. The Seventh Circuit affirmed dismissal of the benefit plans' claim for failure to plead that their injury was proximately caused by the defendant's actions, because even though the plans "part[ed] with money, . . . it is not at all clear that they are the initially injured parties, let alone the sole injured parties." *Id.* at 576. In fact, there were multiple parties in the causal chain ahead of the benefit plans, namely, patients and physicians. *See id.*

Similar to *Sidney*, multiple links in the chain separate the alleged misconduct in the Illinois legislature from the issuance of red-light camera violations, making the Plaintiff's alleged injury far too remote under § 1964(c). *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 398 (7th Cir. 2006) (finding plaintiff failed to plead defendants proximately caused its injuries where defendants, competing construction companies, pled guilty for bribing Wisconsin state officials for public contracts, noting a "court could never be certain whether [plaintiff] would have won any of the

17

contracts that were subject of the conspiracy for any number of reasons unconnected to the asserted pattern of fraud") (internal citation and quotation marks omitted); *Ill. ex rel. Ryan v. Brown*, 227 F.3d 1042, 1045 (7th Cir. 2000) (finding citizens did not have sufficient injury to bring civil RICO suit against individuals who bribed Illinois state officials because the plaintiffs' injuries were "too remote").

Finally, Ms. Zollar and Mr. Lai adopt the arguments set forth by the City of Oakbrook Terrace regarding Plaintiff's failure to plead a RICO injury because (a) he has failed to plead that he actually paid the civil penalty associated with a red-light camera, and (b) he is not the owner of the automobile alleged to have violated the red-light camera. *See* Dkt. No. 22, at 7-11.

For these reasons, Plaintiff has not pleaded a cognizable injury and the Complaint's claims against Ms. Zollar and Mr. Lai should be dismissed.

**B. The Complaint Fails to Plead RICO Conspiracy.**

Because the Complaint fails to plead a substantive racketeering violation, the RICO conspiracy claim also fails against Ms. Zollar and Mr. Lai. *See United Food and Commercial Workers Unions and Emp'rs Midwest Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) ("Having failed to plead facts that would establish a violation of Section 1962(c), the [plaintiff] cannot state a claim for conspiracy under Section 1962(d) based on those same facts.").

Furthermore, the Complaint falls well short of pleading the elements of a § 1962(d) claim against Ms. Zollar and Mr. Lai individually. Nowhere does the Complaint allege facts demonstrating that either of them (1) "agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs," or (2) "agreed that some member of the conspiracy . . . would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017); *see also Goren*, 156 F.3d at 732 ("We have stressed that the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute

a violation of the substantive statute."). As the Seventh Circuit has emphasized, "[t]he first step is to allege that **each** defendant . . . knew about this conspiracy." *Domanus*, 847 F.3d at 479 (emphasis added). Similarly, the Complaint fails to plead facts demonstrating that Ms. Zollar and Mr. Lai agreed to the commission of at least two predicate acts of racketeering. *See Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1383 (N.D. Ill. 1996) ("There are no allegations from which the court can infer that each defendant agreed to conduct the affairs of an enterprise through a pattern of racketeering activity or that each defendant agreed to the commission of at least two predicate acts."). These failings are fatal to Plaintiff's racketeering conspiracy claim against Ms. Zollar and Mr. Lai.

Lumping Ms. Zollar and Mr. Lai together into a broad and disparate group of eighteen total defendants who allegedly were associated with the enterprise and agreed to a conspiracy is insufficient. *See Vicom, Inc.*, 20 F.3d at 778. Therefore, the racketeering conspiracy claim should be dismissed against both Ms. Zollar and Mr. Lai.

## V.   CONCLUSION

For the foregoing reasons, Ms. Zollar and Mr. Lai respectfully request that the Court grant their motion to dismiss Plaintiff's Complaint against them in its entirety.

Dated:  July 6, 2020

/s/ *Zachary T. Fardon*
Zachary T. Fardon

KING & SPALDING LLP
Zachary T. Fardon
Patrick M. Otlewski
353 N. Clark Street, 12th Floor
Chicago, IL 60654
Phone: 312.995.6333
zfardon@kslaw.com
potlewski@kslaw.com

*Attorneys for Defendants*
*Nikki Zollar and Chris Lai*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2020, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

_/s/ Zachary T. Fardon_
Zachary T. Fardon

KING & SPALDING LLP
Zachary T. Fardon
Patrick M. Otlewski
353 N. Clark Street, 12th Floor
Chicago, IL 60654
Phone: 312.995.6333
zfardon@kslaw.com
potlewski@kslaw.com

_Attorneys for Defendants_
_Nikki Zollar and Chris Lai_
